IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1870.

---

### VANKIRK v. SKILLMAN AND WIFE ET AL.

1. A married woman, although possessed of a separate estate, cannot make herself liable to a suit at law by executing a promissory note as a surety.
2. The statute which authorizes a suit against husband and wife when a debt remains unsatisfied by reason of the business transacted by the wife, (*Nix. Dig.* 548,) applies to cases only where the wife is beneficially interested, the consideration moving to her.

*Quere?*—Can the legislature impose on the property of the husband the debts of the wife contracted during coverture in her own right, for her own benefit, and without his assent, express or implied?[*]

---

On rule to show cause, &c.

This cause was tried before the Circuit Court of the county of Somerset. For the purposes of the trial, the judge who presided charged that the plaintiff was entitled to recover. The questions in this court arose on a rule to show cause. The facts sufficiently appear in the opinion delivered.

Argued before the CHIEF JUSTICE, and DALRIMPLE and

---

[*]SEE *Rev.*, p. 638, § 10–12.

DEPUE, Justices.   (VAN SYCKLE, J., did not sit, having been of counsel.)

For the motion, *M. Beasley, Jr.*

Contra, *Messrs. Richey & Emery.*

BEASLEY, CHIEF JUSTICE.   A married woman, together with her husband and others, executed a promissory note as a surety, and the present suit is against her and the other makers.   The question for decision is, whether by force of the statute of this state, a married woman can be made liable at law under an obligation of this character?*

The act to which this inquiry relates is that approved March 24th, 1862, entitled "An act to prevent the fraudulent transfer of property, and to facilitate the collection of just claims."   The language of so much of it as is at present material is as follows, *viz.:* "In all cases where a married woman transacts any business or purchases any property, and debts and claims thereby remain unsatisfied, it shall and may be lawful for any person holding any such debt or claim to institute a suit for the recovery of the same, in any court of law of this state, against the husband and wife, or against the survivor of them, in case one of them be dead, and to proceed to final judgment, the same as in other actions," &c.

In the case of *Eckert* v. *Reuter,* 4 *Vroom* 266, this statute, in one of its applications, received a construction.   A married woman who was possessed of property of her own, entered into a contract for her own benefit, and this court held that such a contract was capable of enforcement against her by an action at law.   The principle of that construction was this: that the act did not attempt to confer upon a *feme covert* any new power to contract; that the only instance known to the law in which a *feme* could, in her own right, bind herself by agreement was, where she had property of her own, with respect to which her agreements would be good in equity; and that, consequently, if a *feme covert,*

*SEE *Rev.,* p. 637, § 5.

Vankirk v. Skillman and wife et al.

having no separate estate, did contract, such act being wholly void, no debt or claim could "thereby remain unsatisfied." It will be observed that the only point decided in this case was, that a married woman could be sued by force of this statute, if at the time she entered into the contract on which the action was founded, she was the owner of some property or estate, and the contract being for her own benefit, was such that it could be enforced against her in equity.

This construction thus given to this act largely contracts the sphere of its operation. Instead of being extended to all contracts of married women, it affects those only of a limited class. It was felt that the act was one which ought to receive a somewhat rigorous construction. In the consideration of the case just cited, it was even suggested that the range of the efficacy of the act might be still further restricted by holding that it applied only in cases where a married woman was carrying on *a trade, calling, or continuous business.* But it was concluded that the statutory language would not admit of so narrow an interpretation. The phrase, "to transact any business," does not mean to carry on a continuous business merely. It has a much broader signification. The court could not say that a married woman who had transacted a single act of business had not "transacted any business." This language was clear, and there is not a word in the other parts of the act to control or affect it, and the consequence was, the proposed view was rejected, and it seems to me rightly so, if any difference is to be preserved between interpolation and legal construction. Where the operation of a statute appears to be highly inconvenient, it is somewhat difficult to resist the natural inclination to strain a point to control it, and it is necessary, therefore, continually to bear in mind that the legal rule upon the subject is clear. "The only rule," says Mr. Broom in his essay on *Legal Maxims, p.* 248, "for the construction of acts of parliament is, that they should be construed according to the intent of the parliament which passed the act. If the words of the statute are in themselves precise and unambiguous,

then no more can be necessary than to expound the words in their natural and ordinary sense." And in this connection the same author says: "It is an established rule of construction that an act of parliament shall be read according to the ordinary and grammatical sense of the words, unless being so read it would be absurd or inconsistent with the declared intention of the legislature to be collected from the rest of the act." As it is obvious, then, that the expression, "transact any business," is free from all ambiguity or uncertainty, and as it is not absurd in its results, nor repugnant to any part of the context, it does not seem to me that upon the basis of the doctrine above cited, it could have been so narrowed as to embrace acts done only in the course of a trade or established occupation. In my apprehension, in the case referred to, the act was properly construed.

But the element that was declared in *Eckert* v. *Reuter* to be essential is not absent in this case, for it is shown that this married woman, at the time she signed the note in suit, was the owner of a separate estate. If, therefore, this contract had been for the benefit of the *feme*, there would be no question with regard to the sustainability of this action. The only matter for consideration is, whether, as this is a contract of suretyship in which she was not beneficially interested, the suit will lie.

It was insisted on the argument in favor of the action that this was a contract which would bind in equity, and that, consequently, by force of the act, it was binding at law. Whether an obligation of a married woman, arising out of a naked suretyship, will be enforced in equity, is a question concerning which there has been much diversity of judgment. But I shall assume for present purposes that such an engagement is enforceable upon equitable principles, for even upon this assumption it does not seem to me that it is available under the statute in question. In the case of *Eckert* v. *Reuter*, the circumstances did not call for any consideration of the problem, whether this right of suit at law was co-extensive with the right of suit in equity. The results of the pro-

cedures are attended with a marked difference. In equity, the property only of the wife is bound by the decree; at law the judgment can, if that statute be completely enforceable, be levied out of the property of the husband as well as out of that of the wife. In the nature of the transaction, therefore, and considered with respect to its consequences, there is nothing to lead to the belief that the design was to make the legal remedy concurrent with the equitable one, but, on the contrary, all reasonable implications would seem to point to the opposite conclusion. In this case, therefore, it may well be that the plaintiff in this suit may exact his claim from this female defendant by an appeal to the Court of Chancery, but the widely different inquiry now is, can he proceed in the present form?

It will be perceived that the principle claimed, and which must be claimed to support this action, involves the proposition that the right of the wife to contract is absolute and unrestricted, provided she has any property of her own. The agreement now sought to be enforced is one from which she is to receive no benefit. She signed the note purely for the accommodation of one of the makers of it. If, then, this obligation be valid, there can be no imaginable contract which a man or a *feme sole* can make which a married woman cannot make. She can place herself as surety on all kinds of bonds. She can endorse the notes of her mercantile friends or relatives without the knowledge of her husband, or even against his express dissent, to any amount; and, if this suit is to be sustained, such endorsements will form a legal basis for actions at law against herself and her husband. It is difficult to believe that the legislature had such an end as this in view, and such a result would be so impolitic with respect to the wife, and so injurious to the rights of the husband, that it should not be reached by construction if the language used will fairly admit of any other signification. After a careful examination, I think the language here employed, as well as the whole scope of the act, indicates a purpose to authorize these legal actions only

when the wife enters into contracts in which she is beneficially interested. The language is, " in all cases where a married woman transacts any business or purchases any property, and debts or claims *thereby* remain unsatisfied." Now, this phrase, I think, fairly implies that the business referred to is one in which the *feme covert* is interested as an original party, for if she transacts business as a surety merely, or in any other collateral capacity, debts do not, in strictness, thereby remain unsatisfied. It is the failure of the original party to the transaction to comply with this contract which occasions the debt to remain unsatisfied. Also, the purchase of property referred to in the act means, evidently, property acquired for the benefit of the wife, and from this circumstance a reasonable inference arises that the business designated, in the same connection, is that of the *feme* in like manner. I can see nothing in this language expressive of a purpose to extend to the wife the power of binding herself as surety. If so extraordinary a power had been designed, it is rational to believe that it would have been conferred by plain language. Nor is the title of the act indicative of any such object. As a matter of just construction, then, I think this act embraces contracts only which are made by a married woman when the consideration moves to herself, and that it has no relation to contracts of suretyship or those imposing a merely collateral obligation. The consequence is, I regard the contract of the married woman in this case as void at law.

The foregoing view disposes of the present case, but it is proper to add, in order to avoid being misunderstood, that if I had reached the conclusion that this action is sustainable against the wife, I should have been by no means prepared to say that this act, so far as it is intended to affect the property of the husband, is valid. As at present advised, I have a strong impression that such a statute cannot be sustained, on account of want of power in the legislature to enact it. By a course of legislation in this state, the legal unity growing out of the matrimonial relationship has been, in a great

degree destroyed. A married woman is now, for most purposes, a distinct person in law from her husband. She is, as to most matters, *sui juris*. She can acquire property, without the consent of her husband, by gift, devise, or purchase; she can enter into contracts in her own name and for her own benefit. Now, my embarrassment is to perceive how it is competent, under the constitution of this state, for the legislative power to declare that the husband shall be liable for debts arising out of contracts in which he has no interest, the benefit of which go to his wife, and to which, neither expressly nor by implication, has he yielded any assent. According to the theory of this legislation, a wife may purchase an estate in California or England, and her husband, if sued in our courts, may be made to pay the consideration for it, although the title has passed to the wife. It does not at present occur to me how such a transaction is to be distinguished from taking, by legislative act, the property of one person and giving it to another. It is true that the married state is, in some respects, a political institution, and therefore, in a measure, under the control of government, but such control, as it arises from, so it is to be measured by public utility and interest. With respect to matters of mere property, the power of the state cannot go much beyond seeing that an adequate support is provided for the wife and the offspring. No one, it is presumed, would contend that the legislature could, by enactment, convey the entire property of the husband to the wife. And yet a law which authorizes a wife to purchase property *ad libitum*, in her own name and right, and renders the husband liable to the debt so arising, has little to discriminate it from such an obviously illegal act of legislation. It may possibly be that such laws could be upheld with respect to marriages taking place after their enactment, and within the sphere of their operation, on the ground that such statutory provisions would pass by intendment into the marriage contract; but with respect to antecedent marriages, they appear like mere arbitrary regulations, destructive of vested rights; for to

impose the debts contracted by the child, after his majority, upon the parent, by legislaton, would seem no greater stretch of power than it is to say that the husband must pay for the property acquired by the wife during coverture, for her own benefit and uses.   By these remarks I wish to preclude any inference that it is regarded as settled that a judgment, on a contract of the wife, can be taken against the property of the husband.   That question, in my opinion, is an entirely open one.   In the case of *Eckert* v. *Reuter*, it was not presented to the attention of the court, as the effort then was to reach the property of the wife.

The rule for a new trial is made absolute.

DALRIMPLE and DEPUE, Justices, concurred.